U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives



Report of Investigation

**SUMMARY OF EVENT:**

Search Warrant of 2624 Greenwood Avenue: Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and members of Louisville Metro Intel Task Force (LMINTEL TF) jointly executed a federal search warrant and a state search warrant on May 17, 2017 at 2624 Greenwood Avenue, Louisville, KY. During the two (2) search warrants, investigators seized five (5) firearms, suspected marijuana, unidentified pills, multiple cellular telephones, and documents reflecting some of STRONG's firearms purchases and sales. ATF Special Agents determined STRONG was an unlawful user of a controlled substance and therefore prohibited from possessing firearms.

**NARRATIVE:**

1. On May 16, 2017, ATF Special Agent (SA) Ryan Molinari acquired a federal search warrant for the residence located at 2624 Greenwood Avenue, Louisville, Kentucky 40211, a black Chevrolet Tahoe, with Kentucky Registration Number 914TWY, and the person of Shelby Nathaniel STRONG Jr. (B/M, DOB: [redacted].

2. On May 17, 2017, investigators with ATF and LMINTEL TF jointly conducted the search warrant. Shortly after 12:00 PM, ATF SA's knocked and announced their presence at the front door of 2624 Greenwood Avenue. After waiting a reasonable amount of time, and receiving no response from inside the home, SA's breached the door. SA's walked up several stairs to an enclosed porch and then found a second door. The second door was open and SA's encountered STRONG inside the room immediate to that door. STRONG complied with verbal commands to get on the ground. SA's conducted a protective sweep to determine no additional people were inside the home. During the secondary protective sweep, STRONG demanded to see the search warrant and requested to call his attorney. SA Molinari told STRONG he would explain the situation after the home was secured. During the protective sweep, agents observed suspected marijuana in plain view in STRONG's bedroom. Louisville Metro Police Department (LMPD) Detective (Det.) Charles Popham departed the scene to apply for a state search warrant. Det. Popham received a state search warrant to search for illegal narcotics. Following the protective sweep, SA Molinari presented the federal search warrant to STRONG and explained the contents. SA Molinari repositioned STRONG's handcuffs from behind his back to in front of his body so that STRONG could read the search warrant and its attachments. SA Molinari read STRONG his Miranda Rights verbatim from a card. STRONG agreed to speak with SA Molinari and SA Hicks.

3. SA Molinari and SA Hicks interviewed STRONG while investigators searched the home. During the interview, STRONG provided inconsistent statements. For example, STRONG initially told SA's that he purchased many firearms prior to the recent presidential elections but stopped buying firearms following President Trump's election. SA's knew, from previous investigative measures, that STRONG had purchased many firearms

| Prepared by: Ryan N. Molinari | Title: Special Agent, Louisville Group I Field Office | Signature: [signature] | Date: 5/26/17 |
|---|---|---|---|
| Authorized by: George L. Huffman III | Title: Group Supervisor, Louisville Group I Field Office | Signature: [signature] | Date: 8/30/17 |
| ...nd level reviewer (optional): ...rt L. Lowrey | Title: Special Agent in Charge, Louisville Field Division | Signature: | Date: |





233

following the election. STRONG also stated he had all firearms he previously bought but that he kept them at different locations, to include his brother's home. SA's knew STRONG did not have all of the firearms he originally purchased because multiple firearms STRONG purchased were in law enforcement custody. Also, STRONG eventually admitted he sold some firearms but that he maintained paperwork for all firearms he sold. However, STRONG later said he only maintained paperwork for a short time period. STRONG was mostly focused on the activity in his home rather than answering the agents' questions. Agents offered to speak in a quieter location, but STRONG declined. At one point during the interview, STRONG asked SA Molinari if SA Molinari thought STRONG needed an attorney. SA Molinari advised STRONG that SA Molinari would not provide him legal advice and reminded STRONG of his right to an attorney. STRONG did not request an attorney and he continued speaking to the agents. STRONG provided the following statement:

a. STRONG bought many firearms prior to the recent presidential election because he was concerned with gun control. After the elections, STRONG continued buying firearms but not as many (Note: SA Molinari later referenced the previously formed list of STRONG's firearms purchases from September 2016 – May 2017 and identified six [6] firearms purchased by STRONG prior to the election and twenty-five [25] purchased following the election). STRONG then stated he buys guns all the time but was not certain how many he had purchased. STRONG stated he purchased the majority of firearms from River City Firearms but had also purchased firearms from Orion Arms, Knob Creek, and gun shows.

b. STRONG admitted he sells firearms. STRONG originally said he maintained paperwork for all of his firearms sales (Note: SA Molinari later analyzed paperwork acquired during the search warrant that indicated the sale of nine (9) firearms by STRONG. One of these firearms was not previously identified by ATF as one of the thirty-one (31) firearms originally purchased by STRONG. Approximately nineteen (19) firearms associated with STRONG were not in his possession at the time of the search warrant, nor did he have paperwork for their sale). STRONG stated he only maintained bills of sale for his firearms sales for a short time. STRONG learned this was not necessary and ceased using the bills of sale when selling firearms.

c. STRONG does not sell marijuana. The marijuana in his home is for his personal use. STRONG smokes marijuana approximately four (4) to five (5) times a day and has done so for several years.

4. After securing the home, investigators conducted a thorough search of the residence. The first door of the home opened up to an enclosed porch and contained multiple dog crates and dogs. Past the door that led from the enclosed porch was a relatively empty room. In this room was a large flat-screen television that displayed multiple camera feeds around the residence. Also on the main floor was a kitchen and two (2) bedrooms. One bedroom (hereafter referred to as Master Bedroom) contained STRONG's belongings while the other contained mostly children's belongings. The residence also had a large basement beneath the main floor and a detached garage in the backyard. The detached garage had been converted to another living area. The backyard contained multiple dog kennels and numerous dogs. STRONG provided investigators with keys to enter the Chevrolet Tahoe. Investigators seized the following significant items from the residence, detached garage, and vehicle (see attached forms for entire list of seized items):

a. Mossberg, Model 715T, .22 caliber rifle, S/N: EK13280311
    i. Recovery Location: Master Bedroom
b. Canik55, Model TP-9SA, 9mm pistol, S/N: 16AP10468
    i. Recovery Location: Master Bedroom







KAMENISH

c. Taurus, Model PT738 TCP, .380 caliber pistol, S/N: 01930F
    i. Recovery Location: Vehicle (Driver's Door)
d. Anderson Manufacturing, Model AM-15, multi-caliber pistol, S/N: 16335857
    i. Recovery Location: Master Bedroom
e. Anderson Manufacturing, Model AM-15, multi-caliber rifle, S/N: 17011353
    i. Recovery Location: Master Bedroom
f. Suspected marijuana
    i. Recovery Location: Master Bedroom/Detached Garage
g. Fifty-Five (55) Assorted Pills (in unmarked prescription bottles)
    i. Recovery Location: Kitchen
h. Miscellaneous Documents
    i. Recovery Location: Master Bedroom/Dining Room

5. Investigators observed, but did not seize, nearly $5,000 of cash in the master bedroom and a bong in the detached garage. Also in the detached garage were hundreds of collectable figurines.

6. SA's administratively seized the five firearms from STRONG due to him being an unlawful user of a controlled substance and therefore in violation of 18 USC 922(g)(3). Four (4) of the five (5) firearms seized from STRONG were previously identified as firearms purchased by STRONG. The Anderson Manufacturing rifle, bearing serial number 17011353, was not previously identified as a firearm originally purchased by STRONG. SA Molinari requested a trace of the firearm to determine original purchaser information.

7. The miscellaneous documents recovered throughout the residence included, but were not limited to, receipts for purchases of firearms and firearm parts, receipts for sales of firearms between STRONG and private parties, a receipt for the purchase of multiple money counters, and an identification card for a PNC Bank account. Investigators also seized multiple cellular telephones and a video recorder that was connected to the surveillance cameras.

8. At the conclusion of the search warrant, SA Molinari noticed several items that LMPD intended to seize were taken into ATF custody. SA Molinari and SA Hicks met Det. Popham at the LMPD property room and transferred the pills, suspected marijuana, and surveillance camera video recorder.

9. On May 24, 2017, SA Molinari received trace information for the Anderson Manufacturing, Model AM-15, multi-cailber rifle, S/N: 17011353. According to the trace information, Betty Smith (W/F, DOB: [redacted]) of Richmond, KY purchased the firearm in Lexington, KY on February 16, 2017, 90 days prior to ATF recovering it.

ATTACHMENTS:

- ATF Item Seized Report
- Receipt for Property and Other Items
- ATF Photography Log
- LMPD Property and Evidence Voucher
- Gun Trace
- CD of Photos and Video







KAMENISH